UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| COREY BRUCE PATRICK, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| v. | ) | Nos.: 3:17-cv-179-TAV-HBG |
| | ) | 3:15-cr-63-TAV-HBG-1 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Corey Bruce Patrick has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1].[1] The government has responded [Doc. 8]. Because, based on the record before the Court, it plainly appears that Petitioner is not entitled to relief, it is not necessary to hold an evidentiary hearing,[2] and his motion will be denied.

**I.    BACKGROUND**

In April 2015, Petitioner was charged by information with one count of unlawfully killing another human, with malice aforethought ("second-degree murder") within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C.

---

[1] All docket citations refer to this civil case unless otherwise indicated.

[2] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

§§ 111(a), (b), and 7(3) [Doc. 1, No. 3:15-cr-63]. That same day, Petitioner entered into a written plea agreement, in which he agreed to plead guilty to the sole count of the information [Doc. 2 at 1, No. 3:15-cr-63]. As a factual basis for his plea, Petitioner admitted that, on or about October 8, 2014, he drove Heather Nicole Hendrix's car within the Great Smoky Mountains National Park ("GSMNP") [*Id*. at 2]. Before driving, Petitioner consumed alcohol and became intoxicated. According to text messages recovered from Hendrix's cell phone, at approximately 2:03 a.m. she sent a text message describing Petitioner's driving as "fast and crazy." Around 2:04 a.m. law enforcement received dispatch of a single car crash on the Northbound Spur within the GSMNP. Witnesses described watching the car crash head-on into a tree. When law enforcement arrived, Hendrix was in the front passenger seat of the vehicle, and Petitioner was in the driver's seat. During their attempts to remove Petitioner from the car, he stated that he had been drinking [*Id*.]. Due to extensive damage to the vehicle, Hendrix's removal was difficult, and, shortly after being removed, she died on the scene [*Id*. at 3]. Subsequent lab testing revealed that Petitioner had a blood alcohol level of .193 at or near the time of the crash, and tested positive for amphetamine [*Id*.].

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Petitioner and the government agreed that a sentence of 180 months' imprisonment was an appropriate disposition of the case [*Id*. at 4]. The plea agreement also contained waivers of Petitioner's rights to directly appeal or collaterally attack his conviction or sentence. [*Id*. at 6-7].

However, Petitioner's collateral-attack waiver contained exceptions for claims based on prosecutorial misconduct or ineffective assistance of counsel [*Id*. at 7].

Defense counsel filed a sentencing memorandum encouraging the Court to accept the agreed-upon 180-month sentence [Doc. 19, No. 3:15-cr-63]. In that memorandum, defense counsel argued that federal case law regarding fatal accidents and alcohol is inconsistent, highlighting cases that resulted in sentences ranging from 33 months to 324 months [*Id*. at 3-4]. Defense counsel argued that "[i]t would not have been completely unreasonable of [defendant] to take his chances at trial[,]" but argued that he accepted the plea agreement to spare his children, and the victim's children, the stress of a trial [*Id*. at 4-5]. Counsel also noted how several facts that would come out at trial, including the fact that the victim tested positive for amphetamine and methamphetamine, and that she was having an affair with both the defendant and another man, would potentially be embarrassing to the victim's children [*Id*. at 5-6].

The final revised presentence investigation report calculated Petitioner's advisory guideline range as 168 to 210 months' imprisonment [Doc. 34, ¶ 54, No. 3:15-cr-63]. Neither Petitioner nor the government filed any objection to this calculation [Doc. 33, No. 3:15-cr-63]. The Court ultimately accepted the Rule 11(c)(1)(C) plea agreement and sentenced Petitioner to a total of 180 months' imprisonment and 5 years' supervised release [Doc. 36 at 2-3, No. 3:15-cr-63]. Consistent with his direct appeal waiver, Petitioner did not file a direct appeal. This timely § 2255 motion followed.

3

## II.  ANALYSIS

The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255.  To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

In his § 2255 motion, Petitioner asserts that he raises one claim of ineffective assistance of counsel relating to the validity of his guilty plea [Doc. 1 at 4].  However, in his accompanying memorandum, Petitioner appears to claim that: (1) his guilty plea was not knowing and voluntary because he was not informed of certain notice requirements that would apply to him upon his release from prison; (2) his counsel failed to investigate the malice aforethought element of the charge offense; (3) his counsel did not negotiate a better plea agreement; and (4) his counsel filed a "frivolous" sentencing memorandum [Doc. 2].

4

As discussed above, claims for ineffective assistance of counsel are expressly excepted from the collateral-attack waiver provision in the plea agreement. Accordingly, Petitioner's ineffective assistance claims are not waived, and the Court will address their merit. Moreover, the Sixth Circuit has held that "where a defendant argues that his plea was not knowing or voluntary . . . it would be entirely circular for the government to argue that the defendant has waived his right to . . . a collateral attack when the substance of [the] claim challenges the very validity of the waiver itself." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (internal citation omitted). Accordingly, the Court concludes that Petitioner's claim challenging the validity of his plea is not waived by the collateral attack waiver.

A. **Validity of Guilty Plea**

In this claim, Petitioner asserts that his conviction constitutes a crime of violence under 18 U.S.C. § 924(c)(3), and therefore, under 18 U.S.C. § 4042(b), the Bureau of Prisons ("BOP") is required to notify law enforcement prior to his release from custody [Doc. 2 at 7-8]. He also argues that, after his release, he is subject to notice requirements regarding a change of residence through the United States Probation Office [*Id.* at 8]. Petitioner argues that he was not made aware of any of these notification requirements before entering a guilty plea, and therefore, the plea could not have been knowing and voluntary [*Id.*].

"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614,

5

621 (1998). A claim that a plea is not intelligent because the information provided by the Court at the plea colloquy was erroneous can be "fully and completely addressed on direct review[,] and thus, is procedurally defaulted if not first raised on direct review. *Id*. at 622. If a claim is procedurally defaulted because a Petitioner has not raised it on direct appeal, he may only raise it in a collateral attack if he can demonstrate cause and actual prejudice or that he is "actually innocent." *Id*. The "actual innocence" standard requires a finding of factual innocence, not mere legal insufficiency. *Id*. at 623.

Petitioner's claim that his plea was not knowing and voluntary is procedurally defaulted because he did not file a direct appeal raising this claim. Although Petitioner agreed to an appeal waiver as part of his plea agreement, a claim challenging the validity of his plea would have been excepted from this waiver, for the same reasons that the instant claim is excepted from the collateral attack waiver. *See Acosta*, 480 F.3d at 422 ("where a defendant argues that his plea was not knowing or voluntary . . . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of [the] claim challenges the very validity of the waiver itself" (internal citation omitted)). Petitioner's claim that he was not properly informed of certain notification requirements prior to entering his plea of guilty could have been fully and completely addressed on direct appeal, and, because Petitioner failed to raise this claim on direct appeal, it is procedurally defaulted. Moreover, Petitioner has not asserted any cause and prejudice for his failure to raise this claim on direct review. To the extent that Petitioner's overall arguments could be construed as a claim of "actual innocence,"

6

Petitioner does not argue that he is factually innocent of causing the death of another human while driving under the influence of drugs and alcohol, but instead, merely contests whether the evidence was sufficient to meet the element of "malice aforethought." Such is a claim of "legal insufficiency" rather than "factual innocence" and is, therefore, insufficient to overcome a procedural default. Accordingly, this claim is procedurally defaulted and will be rejected for that reason.

In the alternative, Petitioner's claim also lacks merit. To be knowing and voluntary, a guilty plea must be made with "knowledge of the relevant circumstances and likely consequences" of the plea. *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (internal quotation marks omitted). However, "[t]he defendant need only be aware of the direct consequences of the plea" and "the trial court is under *no constitutional obligation* to inform the defendant of *all* the possible collateral consequences of the plea." *Id*. (emphasis added). "Matters that are beyond the control or responsibility of the district court are collateral consequences[.]" *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009) (citing *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002)). Assuming, without deciding, that Petitioner is correct about the requirement that the BOP notify local law enforcement upon his release, and there is some notification requirement with regard to his supervised release, these are collateral consequences, because they are matters beyond this Court's control or responsibility. Accordingly, Petitioner's plea was not unknowing or involuntary based on the failure to advise Petitioner of these alleged collateral consequences of his plea, and, for this alternate reason, this claim will be rejected.

7

## B. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are cognizable under § 2255. *Massaro v. United States*, 538 U.S. 500, 508-09 (2003). The Sixth Amendment guarantees criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Id*. The Court may address the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697.

To show deficient performance, a petitioner must show that counsel's performance fell "below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689. To establish prejudice a petitioner must show that "but for [counsel's error,] the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

### 1. Collateral Consequences

As an initial matter, to the extent that Petitioner's first claim, regarding notification of the collateral consequences of his plea, can be interpreted as a claim of ineffective

8

assistance of counsel for failure to notify him of these consequences, such claim lacks merit. Counsel's failure to inform Petitioner of every collateral consequence of his guilty plea is not performance that falls below and "objectively reasonable standard." *See Houston v. Lack*, 625 F. Supp. 786, 791 (W.D. Tenn. 1986) (concluding, in the context of the Tennessee Constitution, that "the mere failure of an attorney to inform a defendant of the collateral consequences [of his conviction] does not constitute ineffective assistance of counsel"). Further, Petitioner cannot reasonably assert that if he had been informed of the alleged notification requirements that apply upon his release from prison, he would not have pled guilty and would have insisted on going to trial. Accordingly, this claim will be rejected.

### 2. Investigation

Petitioner asserts that counsel conducted no investigation into the element of "malice aforethought," and told him that there were no available defenses to the second-degree murder charge [Doc. 2 at 5]. He argues that counsel refused to determine the facts because she was sympathetic with the victim, and told him that going to trial would involve painful pictures, embarrassing questions, toxicology reports, etc. [*Id.* at 10-12]. Petitioner suggests that the malice aforethought element was not present because the victim participated in drinking alcohol with him on the night of the accident, placed him in the driver's seat of the car, and may have gotten an adrenaline rush from his "fast and crazy" driving [*Id.* at 13-14].

9

"[A] failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). The Sixth Circuit has held that "[m]alice aforethought may be inferred when the defendant 'grossly deviates from the standard of care to such an extent that a jury could conclude that he must have been aware of a serious risk of death or serious bodily injury.'" *United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008) (quoting *United States v. Sheffey*, 57 F.3d 1419, 1430 (6th Cir. 1995)). Here, regardless of Petitioner's insinuations that the victim was somehow complicit in his driving while under the influence, Petitioner's act of driving under the influence of alcohol and amphetamine clearly "grossly deviates" from the normal standard of care, such that Petitioner must have "been aware of a serious risk of death or serious bodily injury" resulting from his actions. Accordingly, even if the Court were to assume that Petitioner told counsel all of the information he has now presented to the Court, none of this information would have caused a reasonable attorney to feel that more investigation was warranted. Accordingly, Petitioner has not established that his counsel performed deficiently in failing to investigate the malice aforethought element.

Moreover, in the context of a guilty plea, to establish the prejudice requirement the Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Petitioner has not even suggested that, had counsel done further investigation into the malice aforethought element, he would have refused to plead

10

guilty and would have proceeded to trial. In fact, Petitioner does not even explain why he agreed to plead guilty in this case, if he believed that the government could not establish his guilt. Accordingly, even if Petitioner could show deficient performance, he cannot show prejudice. Therefore, this claim is rejected.

### 3. Negotiation

Petitioner appears to assert that counsel did not sufficiently negotiate a plea deal with the government, because she told him that the offer was a "good deal," but later, in her sentencing memorandum, asserted that Petitioner would have been reasonable to reject the plea offer [Doc. 2 at 5-7].

A criminal defendant has no right to a plea agreement, but, "when the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process." *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018). To show prejudice in a plea negotiation context, a petitioner must show "a reasonable probability that, with proper advice, the outcome of those negotiations would have been different." *Id*. at 489-90.

Petitioner's allegations here are simply too deficient to establish either prong of the ineffective assistance analysis. Petitioner does not assert that there was anything else counsel could have done to obtain a better plea offer, nor does he assert that the government was willing to offer a plea agreement containing a lesser sentence. Petitioner's claim ultimately amounts to dissatisfaction with the sentence that he previously agreed to, which

11

is insufficient to state any type of claim for relief in a § 2255 motion. Accordingly, this claim will be rejected.

### 4. Sentencing Memorandum

Finally, Petitioner also seems to suggest that counsel was deficient in submitting a sentencing memorandum that highlighted sentencing disparities in cases involving deaths caused by driving under the influence [Doc. 2 at 5-7]. Petitioner states that counsel's sentencing memorandum was "frivolous" [*Id.*].

"A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire [proceeding] with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). Counsel's discussion about sentencing disparities and the victim's family was a strategic choice, intended to persuade the Court to accept the Rule 11(c)(1)(C) plea agreement, including the sentence that Petitioner had *already accepted*. This is precisely the type of action by counsel that is not subject to challenge on collateral review. Moreover, Petitioner has not, and cannot, establish any prejudice from counsel's sentencing memorandum. At the point when the sentencing memorandum was submitted to the Court, Petitioner had already entered into the plea agreement, and accordingly, there is no argument that, had counsel not included certain arguments in her sentencing memorandum, the outcome of this case would have been different. Because Petitioner has not established either prong of ineffective assistance, this claim will be rejected.

12

## III. CONCLUSION

For the reasons explained above, Petitioner is not entitled to relief under 28 U.S.C. § 2255, and his motion to vacate, set aside or correct sentence [Doc. 1; Doc. 41, No. 3:15-cr-63] will be **DENIED**, and this action will be **DISMISSED**.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24. Moreover, because Petitioner has not made a substantial showing of the denial of a constitutional right and jurists of reason would not dispute the above conclusions, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P. 22(b). A separate judgment order will follow.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE